IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-38-D

| | |
|---|---|
| CHRISTOPHER S. HARRISON, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| EBENCONCEPTS, INC., et al., ) | |
| ) | |
| Appellees. ) | |

Christopher S. Harrison ("Harrison" or "appellant") appeals the memorandum opinion and judgment denying discharge of the United States Bankruptcy Court for the Eastern District of North Carolina ("bankruptcy court") holding that Harrison's debt owed to EbenConcepts, Inc. ("EbenConcepts"), Orchestrate HR, Inc. ("Orchestrate"), and Mouzon Bass, III ("Bass") (collectively, "appellees") is non-dischargeable under 11 U.S.C. §§ 727(a)(2), (a)(3), and (a)(4). See [D.E. 1]. As explained below, the bankruptcy court properly concluded that Harrison's debt is non-dischargeable under 11 U.S.C. §§ 727(a)(3) and (a)(4). Thus, the court affirms the bankruptcy court's judgment, and Harrison's debt remains non-dischargeable.

I.

This dispute arises from Harrison submitting and falsely recording personal expenses from his personal credit card as business expenses of EbenConcepts and Orchestrate. Harrison did so in order to avoid paying taxes on millions of dollars he was spending for personal use when Harrison served as EbenConcepts's president, secretary, chief executive officer ("CEO"), and sole director and Orchestrate's majority shareholder and chief financial officer ("CFO") from December 2010 through September 2019. See [D.E. 1-1] 2–6. Harrison also deleted and destroyed personal records and business records belonging to EbenConcepts and Orchestrate concerning these false recordings. See id. at 7–11.

On January 5, 2022, after a bench trial and final post-trial order, the bankruptcy court issued a memorandum opinion and judgment denying Harrison general discharge pursuant to 11 U.S.C. §§ 727(a)(2)–(4). See [D.E. 1-1, 1-2]. On January 21, 2022, Harrison appealed the bankruptcy court's memorandum opinion and judgment. See [D.E. 1]. On May 20, 2022, Harrison filed a brief in support of his appeal [D.E. 26]. On July 20, 2022, appellees responded [D.E. 29]. On August 5, 2022, Harrison replied [D.E. 31]. On appeal, Harrison argues that the bankruptcy court erred in denying him a general discharge under 11 U.S.C. §§ 727(a)(2)–(4). See [D.E. 27, 30].[1]

II.

Under 28 U.S.C. § 158(a)(1), district courts have jurisdiction to hear appeals from the "final judgments, orders, and decrees" of bankruptcy courts. In bankruptcy proceedings, "the concept of finality is more flexibly applied than with regard to district court judgments." Brandt v. Wand Partners, 242 F.3d 6, 13 (1st Cir. 2001); see Mort Ranta v. Gorman, 721 F.3d 241, 246 (4th Cir. 2013); McDow v. Dudley, 662 F.3d 284, 287 (4th Cir. 2011); In re Comput. Learning Ctrs., Inc., 407 F.3d 656, 660 (4th Cir. 2005); A.H. Robins v. Piccinin, 788 F.2d 994, 1009 (4th Cir. 1986). No uniform rule, however, has developed to determine when an order or judgment is final. See Brandt, 242 F.3d at 13. An order that "ends a discrete judicial unit in the larger case concludes a bankruptcy proceeding and is a final judgment for the purposes of 28 U.S.C. § 158." In re Kitty Hawk, Inc., 204

---

[1] On November 30, 2022, the United States charged Harrison in the United States District Court for the Eastern District of North Carolina with willfully filing a false tax return in violation of 26 U.S.C. § 7206(1). See Criminal Information, United States v. Harrison, No. 5:22-CR-309 (E.D.N.C. Nov. 30, 2022), [D.E. 1]. The offense conduct covered Harrison's 2017 tax return filed on or about June 13, 2018, which significantly under represented his total adjusted gross income. See id. at 1. On January 24, 2023, with a written plea agreement, Harrison pleaded guilty to willfully filing a false tax return in violation of 26 U.S.C. § 7206(1). See id. at [D.E. 9]. In his plea agreement, Harrison agreed to make restitution to the United States Internal Revenue Service in the amount of $5,927,704.00 for tax years 2012 through 2018. See id. at 1–2. The court set Harrison's sentencing for April 25, 2023. See id. at [D.E. 8].

2

F. App'x 341, 343 (5th Cir. 2006) (per curiam) (unpublished) (alteration omitted); see Mort Ranta, 721 F.3d at 246; McDow, 662 F.3d at 287; In re Comput. Learning Ctrs., Inc., 407 F.3d at 660.

A district court reviews a bankruptcy court's legal determinations de novo and its factual findings for clear error. See In re White, 487 F.3d 199, 204 (4th Cir. 2007); In re Official Comm. of Unsecured Creditors for Dornier Aviation (N. Am.), Inc., 453 F.3d 225, 231 (4th Cir. 2006); Schlossberg v. Barney, 380 F.3d 174, 178 (4th Cir. 2004); In re Plumlee, 236 B.R. 606, 609 (E.D. Va. 1999). "[I]n reviewing a bankruptcy case on appeal, a district court can consider only that evidence which was presented before the bankruptcy court and made a part of the record." In re Bartlett, 92 B.R. 142, 143 (E.D.N.C. 1988); see Fed. R. App. P. 10(a); Union Bank v. Blum, 460 F.2d 197, 202 (9th Cir. 1972); Arcari v. Marder, 225 B.R. 253, 256 (D. Mass. 1998).

"Critical features of every bankruptcy proceeding are the exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts." Cent. Va. Cmty. Coll. v. Katz, 546 U.S. 356, 363–64 (2006) (quotation omitted); see Lamar, Archer & Cofrin, LLP v. Appling, 138 S. Ct. 1752, 1758 (2018); Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934). The "fresh start" affords a debtor the opportunity to "enjoy a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." Grogan v. Garner, 498 U.S. 279, 286 (1991) (quotation omitted); see Hunt, 292 U.S. at 244. Accordingly, "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." Celotex Corp. v. Edwards, 514 U.S. 300, 308 (1995) (quotation omitted).

After a lengthy trial, the bankruptcy court entered a memorandum opinion and judgment denying Harrison a general discharge under 11 U.S.C. §§ 727(a)(2)–(4). See [D.E. 1-1, 1-2]. On

3

appeal, Harrison disputes the bankruptcy courts holding that his debt owed to appellees was not subject to discharge under 11 U.S.C. §§ 727(a)(2)–(4). See [D.E. 26].

Appellees had to establish in the bankruptcy court an exception to discharge by a preponderance of the evidence. See Grogan, 498 U.S. at 287–88, 291; Farouki v. Emirates Bank Int'l, Ltd., 14 F.3d 244, 249 (4th Cir. 1994). A bankruptcy court limits non-dischargeability provisions "to those plainly expressed" in the statutory text. Kawaauhau v. Geiger, 523 U.S. 57, 62 (1998) (quotation omitted).

As for 11 U.S.C. § 727(a)(3), "[t]he court shall grant the debtor a discharge unless":

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

"[A] party objecting to a bankruptcy discharge petition on this basis must make an initial showing that (1) the debtor failed to keep and preserve adequate financial records, and (2) such a failure makes it impossible to ascertain the debtor's financial condition." Mercantile Peninsula Bank v. French (In re French), 499 F.3d 345, 354 (4th Cir. 2007). A debtor need not maintain perfect records, but a debtor must "preserve sufficient and adequate financial records to enable the court and the parties to reasonably ascertain an accurate picture of his financial affairs." Id. at 355. To determine whether a debtor has maintained adequate records to support a discharge under 11 U.S.C. § 727(a)(3), the court may consider numerous factors including the "level of a debtor's sophistication, the complexity of the debtor's transactions, the lack of timeliness of a debtor's disclosure of records, and any other relevant circumstances." Lynch v. Hollan (In re Hollan), Nos. 19-00778-5, 19-00162-5, 2021 Bankr. LEXIS 882, at *14–15 (Bankr. E.D.N.C. Apr. 2, 2021) (unpublished) (quotation omitted); see In re French, 499 F.3d at 356.

From September to November 2019, within one year of the filing of the bankruptcy petition, Harrison deleted thousands of personal records, emails, and business records belonging to appellees.

4

Harrison also transferred personal and business records to thumb drives, which Harrison then destroyed. Harrison admitted that he deleted and destroyed this property. See [D.E. 16] 9–15, 17–18. Moreover, the testimony of a forensic computer expert, Lance Solves, confirmed that Harrison deleted and destroyed thousands of personal financial records and corporate business records during this time period. See [D.E. 15] 110, 113–116.

Harrison's conduct deleting and destroying personal records and business records belonging to appellees on his corporate laptop supports denial of discharge under 11 U.S.C. § 727(a)(3). Notably, the bankruptcy court found that the personal and business records that Harrison deleted and destroyed contained personal credit card statements and emails regarding those statements and charges concerning Harrison's understated income, and therefore would hinder and delay the Internal Revenue Service and other taxing authorities in addressing Harrison's taxable income. See [D.E. 1-1] 7–8. Additionally, EbenConcepts, Orchestrate, and Bass could have used the deleted and destroyed information to reconstruct the improper coding of Harrison's personal expenses. The bankruptcy court found that the timing of the deletion and destruction of the information and the particular information deleted and destroyed reflected Harrison's intent to hinder and delay creditors and his intent to defraud. The bankruptcy court also found that Harrison failed to keep records by both deleting and destroying records and failing to timely and completely disclose records to the trustee of the bankruptcy estate, which made it impossible for the trustee to ascertain Harrison's financial condition even after multiple subpoenas and amendments to the schedules and statements of financial affairs. See [D.E. 1-1] 7–14; see also [D.E. 13] 129–30, 132–33, 142–44; [D.E. 12]; [D.E. 10-1]; [D.E. 10-2]; [D.E. 19] 6–9; [D.E. 11-2]. Accordingly, the bankruptcy court properly concluded that Harrison's debt is non-dischargeable under 11 U.S.C. § 727(a)(3). See, e.g., Meridan Bank v. Alten, 958 F.2d 1226, 1230–32, 1234 (3d Cir. 1992); Zanderman, Inc. v. Sandoval (In re Sandoval), 153 F.3d 722, 1998 WL 497475, at *2 (4th Cir. Aug. 10, 1998) (unpublished table decisions); LM Ins. Corp. v. De Caris (In re De Caris), 585 B.R. 787, 792 (Bankr. D.S.C. 2018);

5

Lafarge N. Am., Inc. v. Poffenberger (In re Poffenberger), 471 B.R. 807, 816–19 (Bankr. D. Md. 2012); First Union Nat. Bank v. Golob (In re Golob), 252 B.R. 69, 75–78 (Bankr. E.D.N.C. 2000); Butler v. Ingle (In re Ingle), 70 B.R. 979, 983 (Bankr. E.D.N.C. 1987).

As for 11 U.S.C. § 727(a)(4), "[t]he court shall grant the debtor a discharge unless":

the debtor knowingly and fraudulently, in or in connection with the case—

   (A)   made a false oath or account;
   (B)   presented or used a false claim;
   (C)   gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
   (D)   withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs[.]

Whether a debtor has made a false oath is a question of fact for the trial court. In re French, 499 F.3d at 352. The question of fraudulent intent "depends largely upon an assessment of the credibility and demeanor of the debtor." Id. at 354.

Harrison signed schedules and statement of financial affairs under penalty of perjury. See [D.E. 10-1] 99. Harrison amended those documents several times but never amended them to accurately reflect Harrison's financial condition or transactions. See id. at 50–51; see also [D.E. 11-1] 5. For example, Harrison did not accurately or promptly disclose his gambling transactions, his jewelry transactions, or his income. See id. at [D.E. 11-1] 5. Harrison's failure to accurately and promptly disclose this information shows Harrison's intent to defraud. See, e.g., McClain v. Parker (In re Parker), 531 B.R. 103, 107 (Bankr. E.D.N.C. 2015); First Fed. Savings & Loan Assoc. of Raleigh v. Johnson (In re Johnson), 82 B.R. 801, 805 (Bankr. E.D.N.C. 1988); In re Ingle, 70 B.R. at 983. After reviewing the record, listening to Harrison's testimony, observing Harrison's demeanor, and evaluating Harrison's credibility, the bankruptcy court found that Harrison's testimony that he was unable to provide correct information more quickly and completely not credible. See [D.E. 1-1] 11. This court agrees. As for Harrison's intent to defraud, the bankruptcy

6

court also found that Harrison committed fraud and embezzlement under 11 U.S.C. §§ 523(a)(2) and (a)(4), respectively. See, e.g., Post Trial Order, Harrison v. EbenConcepts, Inc., No. 5:22-CV-36 (E.D.N.C. Jan. 21, 2022), [D.E. 1-1]. Accordingly, Harrison's debt is non-dischargeable under 11 U.S.C. § 727(a)(4). See, e.g., In re Parker, 531 B.R. at 107; In re Johnson, 82 B.R. at 805; In re Ingle, 70 B.R. at 983.

Harrison deleted and destroyed personal and business records concerning his transfer, use, and concealment of millions of dollars for his own personal benefit in order to avoid paying taxes on the millions of dollars he was spending for his personal use. Harrison's debt is non-dischargeable. See 11 U.S.C. §§ 727(a)(3), (a)(4). In light of this conclusion, the court declines to address the parties' arguments about 11 U.S.C. § 727(a)(2). Thus, the court affirms the bankruptcy court's judgment denying discharge.

III.

In sum, the court AFFIRMS the bankruptcy court's judgment denying discharge. The clerk shall close the case.

SO ORDERED. This 7 day of February, 2023.

JAMES C. DEVER III
United States District Judge

7